THE PEOPLE OF THE STATE OF NEW YORK, Appellant, *v.* 960 PARK
AVENUE CORPORATION, Respondent.

First Department, October 25, 1955.

*Anthony Curreri* of counsel (*Seymour B. Quel* with him on the brief; *Peter Campbell Brown, Corporation Counsel,* attorney), for appellant.

*Eugene J. Morris* of counsel (*Abraham Wilson* and *Matthew J. Domber* with him on the brief; *Demov & Morris,* attorneys), for respondent.

*Per Curiam.* This is an appeal by the People from an order of the Court of Special Sessions dismissing two informations filed herein. The dismissal was on the ground that section 3 of article II of the Zoning Resolution of the City of New York is invalid in that the resolution was made and promulgated by the city planning commission without statutory sanction or authority. The statutes involved are: section 200 of the New York City Charter which empowers the city planning commission, subject to the approval of the board of estimate as herein specified, to amend, repeal or add to: " Any existing resolution or regulation of the board of estimate to regulate and limit the height and bulk of buildings, to regulate and determine the area of yards, courts and other open spaces or *to regulate and restrict the locations of trades and industries and the location of buildings designed for specific uses or creating districts for any such purpose,* including any such regulation which provides that the board of standards and appeals may determine and vary the application of such resolutions or regulations in harmony with their general purpose and intent and in accordance with general or specific rules contained in such regulations." (Italics supplied.) Section 200–2.0 of the Administrative Code of the City of New York grants power to the city planning commission to accomplish the objects of the above charter provision in the following language: " § 200–2.0 *City planning commission to regulate location of trades and industries and of buildings designed for specific uses.* The commission, subject to the provisions of sections two hundred and two hundred one of the charter, may regulate and restrict the location of trades and industries and the location of buildings designed for specific uses, and may divide the city into districts of such number, shape and area as it may deem best suited to carry out such purposes. For each such district regulations may be imposed designating the trades and industries that shall be excluded or subjected to special regulations and designating the uses for which buildings may not be erected or altered. Such regulations shall be designed to promote the public health, safety and general welfare. The

commission shall give reasonable consideration, among other things, to the character of the district, its peculiar suitability for particular uses, the conservation of property values, and the direction of building development in accord with a well-considered plan."

Pursuant to the power given to the city planning commission, it enacted in article II of the zoning resolution the following provisions:

" § 3. *Residence districts.* In a residence district no building or buildings shall be erected other than a building or buildings arranged, intended or designed exclusively for one or more of the following specific uses:

" (1) Dwellings, which except as hereinafter provided in §§ 14-A, 15-A, 16-B and 16-C [sections dealing with districts where only single family dwellings are permitted] shall include dwellings for one or more families and boarding houses and also hotels which have thirty or more sleeping rooms, but shall not include motels. * * *

" (6) Hospitals, sanitariums, government operated health centers, doctors' offices for the practice of medicine, including group medical centers, dentistry and osteopathy as follows:

" (a) In other than multiple dwellings such doctors' offices, including group medical centers, shall be permitted only on the first floor;

" (b) In multiple dwellings such doctors' offices, including group medical centers, shall be permitted only as follows: (1) on the street floor thereof, (2) on the floor immediately above the street floor only if there be access to such doctors' offices from other than the public hall, and (3) on the first floor immediately above the street floor where such use existed on January 1, 1948."

Defendant, owner of premises 960 Park Avenue (a twelve-story and penthouse multiple dwelling located in a residence-use district), leased a twelfth-floor apartment to three doctors for use solely for the practice of medicine. None of the doctors resides in the apartment so leased.

The statutes confer power on the planning commission to regulate the location of trades and industries. Concededly, this does not include a profession such as the practice of medicine. The statutes, however, contain the further power in the commission to " regulate and restrict * * * location of buildings designed for specific uses or creating districts for any such purpose ". It is conceded that a dwelling is a specific use for which a building may be designed. Consequently, it is not

argued that the planning commission did not have power to restrict the sites or the districts in which dwellings could be located. It is argued, however, by the defendant in this case that, once having controlled the location of the building the planning commission no longer could restrict the use of the building, except under the power conferred on the commission to regulate the location of trades and industries first mentioned above. Put another way, the argument is that, except with respect to trades and industries, once the dwelling is erected, it may be used for any purpose. This is much too literal a reading of the statutes. It obviously was the intent of the statutes to cover not only the initial location of buildings designed for specific uses but to regulate such uses beyond initial construction. On this view the planning commission had power to enact the regulation above set forth in which it permitted accessory uses of residential premises where such uses did not involve a trade or industry. (See *People* v. *Kelly,* 255 N. Y. 396.) It also had power to permit independent or nonaccessory use of apartments in multiple dwellings by physicians, provided, the physicians had their offices on the first or second floors of the building and there was access to such offices from other than the public hall. In this case the offices of the physicians are located on floors higher than the street or second floor and, moreover, have no access to them from other than the public hall.

Respondent relies to a great extent on *People* v. *Kelly* (*supra*). That case is clearly distinguished from the facts involved here. In that case, a bona fide resident of the premises in connection with his residence, used the premises in the pursuit of his profession. In the instant situation the premises involved are not to any extent used for residential purposes but exclusively for the practice of medicine. Moreover, the resolution at the time barred business uses and not professional uses. The Court of Appeals held that the teaching of dancing was not a business within the meaning of the resolution anymore than it was a trade or industry within the meaning of the statute.

Dismissal of the information should be reversed and the motion denied, and the matter remitted to the Court of Special Sessions for further proceedings herein.

BREITEL, J. P., BASTOW, BOTEIN, RABIN and COX, JJ., concur.

Dismissal of the information unanimously reversed and the motion denied, and the matter remitted to the Court of Special Sessions for further proceedings in accordance with the opinion herein. Settle order on notice.